UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI WILLIAMS,
    Plaintiff,

Case No 10-cv-1028

V

Hon. Gordon Quist

CITY OF LANSING
LANSING POLICE DEPARTMENT,
    Defendant.
_____/
Richard A. Meier (P38204)
Attorney for the Plaintiff
30300 Northwestern Highway, Ste. 320
Farmington Hills, Michigan 48334
248-932-3500

David K. Otis (P31627)
Plunkett Cooney
Attorney for the Defendant
325 E. Grand River Ave.
Ste 250
East Lansing, Michigan 48823
(517 324-5612
_____/

# EXHIBIT 2

*The U.S. Equal Employment Opportunity Commission*

*EEOC Office of Legal Counsel staff members wrote the following letter to respond to a request for public comment from a federal agency or department. This letter is an informal discussion of the noted issue and does not constitute an official opinion of the Commission.*

**Title VII: Criminal History & Arrest Records, Optional Form 306 & Standard Form 85**

December 1, 2010

Office of Information and Regulatory Affairs
Office of Management and Budget
725 17th Street, NW.,
Washington, DC 20503
Attention: Desk Officer for the Office of Personnel Management

Federal Investigative Services
Office of Personnel Management
1900 E Street, NW.,
Washington, DC 20415
Attention: Lisa Loss

To Whom It May Concern:

The Equal Employment Opportunity Commission (EEOC) submits these comments to the Office of Management and Budget (OMB) in response to the Office of Personnel Management's (OPM) Expiring Information Collection 3206-0182, Declaration for Federal Employment, Optional Form (OF) 306. 75 Fed. Reg. 67,145 (Nov. 1, 2010). To ensure effective enforcement of federal equal employment opportunity laws, we offer in this comment a reminder of the need to carefully craft selection criteria with EEO requirements in mind and to provide effective EEO training to those involved in the hiring process. Additionally, we provide a recommended approach should OPM decide to revise the Questionnaire for Non-Sensitive Positions, Standard Form (SF) 85, to address arrest records, as it suggested in the November 1, 2010 notice.

As you know, the EEOC enforces, among other laws, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), which prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. The EEOC also has responsibility under Executive Order 12067 to coordinate the federal government's enforcement of laws, Executive orders, regulations, and policies that require equal employment opportunity without regard to race, color, religion, sex, national origin, age, or disability. 43 Fed. Reg. 28,967 (July 5, 1978).

**Criminal History Information Request in OF 306**

The current version of OPM's OF 306 requests that the applicant provide criminal history information on past convictions, imprisonments, probations, paroles, or military courts martial within the past ten years, as well as information on any pending charges. OPM now "intends to limit the scope of the collection for conviction, imprisonment, probation, parole, and military court-martial to the past 7 years," rather than ten, "in order to align [OF 306] with the collection of information on investigative questionnaires which generate collection of local law enforcement records." 75 Fed. Reg. 67145, 67146 (Nov. 1, 2010).

Title VII does not prohibit pre-employment inquiries about an applicant's criminal history, but it does

prohibit both "disparate-treatment" and "disparate-impact" discrimination in the use of the information obtained through such an inquiry.[1] Disparate treatment, or intentional discrimination, occurs when a person's race, color, religion, sex, or national origin is all or part of the motivation for an employment decision. Thus, an employer violates Title VII when it intentionally discriminates on the basis of race by, for example, rejecting Black applicants who have conviction records while accepting similarly situated White applicants. Disparate-impact discrimination, on the other hand, occurs when a uniformly applied neutral selection procedure disproportionately excludes people on the basis of race, color, religion, sex, or national origin and the procedure is not job related and consistent with business necessity, or when the employer's business goals can be served in a less discriminatory way. Thus, even in the absence of discriminatory intent, an employer violates Title VII when it uses a selection criterion (e.g., no criminal record) that disproportionately excludes African Americans or Hispanics, unless the employer can show that the criterion is "job-related and consistent with business necessity" for the position in question.[2] With respect to exclusions based on criminal records, employers should assess the risk that a person with a criminal record may pose if employed, by relating the nature of the crime to the nature of the position, in light of the time elapsed since the crime.[3]

To ensure that applicants' criminal history information is used in a way that is consistent with Title VII, we recommend that OPM provide training in these EEO principles to HR staff and other employees involved in the hiring process.

**Future Revisions to Standard Form 85, Questionnaire for Non-Sensitive Positions**

During the 60-day notice and comment period, OPM received a comment from the Department of Treasury recommending that OPM revise OF 306 to collect information from applicants as to whether they have ever been arrested or charged with a crime. 75 Fed. Reg. 67145, 67146 (Nov. 1, 2010). OPM did not accept this recommendation, but it did state that it "will consider including this question in future revisions to the investigative questionnaire for non-sensitive positions," Standard Form (SF) 85. Id. Unlike OF 306, SF 85 is only completed by applicants who have already received a conditional offer of employment.

OPM should be mindful that arrest records, by their nature, should be treated differently from conviction records.[4] A conviction record will usually serve as a sufficient indication that a person engaged in the reported offense because the criminal justice system requires the highest degree of proof for a conviction ("beyond a reasonable doubt").[5] However, arrest records are unreliable indicators of guilt for several reasons. First, an arrest record is not persuasive evidence that the person engaged in the conduct alleged.[6] Individuals are presumed innocent until proven guilty in a court of law, and ultimately, a prosecutor may decide not to press charges, or dismiss the charges after they have been filed, if the circumstances surrounding the arrest do not warrant formal charges.[7] Second, there is evidence that some state criminal record repositories fail to report the final disposition of arrests, which means that an applicant's criminal history information may be incomplete and may not reflect that his arrest charges have been modified or dropped.[8] Finally, arrest records may be inaccurate due to a variety of factors including common names and personal identifying information, misspellings, clerical errors, or because individuals provide inaccurate information at the time of arrest.[9]

It is generally presumed that employers will utilize the information obtained from applicants/employees when making employment decisions. Because disproportionate numbers of African Americans and Hispanics are arrested, the use of arrest records to make employment decisions is likely to have a substantial disparate impact on those groups.[10] And, as discussed above, arrest records – standing alone – are often unreliable indicators of whether a particular individual was in fact arrested or, if so, whether the individual actually engaged in the conduct for which he or she was arrested. OPM may wish to consider whether a question about arrests will serve a useful purpose. If OPM decides that there is a real need for such a question, the EEOC recommends that it limit its inquiry to arrests for offenses that are related to the position in question. Given the unreliable nature of arrest records, the EEOC also recommends that OPM inquire into whether the applicant/employee actually engaged in the misconduct alleged and allow the applicant/employee a reasonable opportunity to dispute the validity of an arrest

record to ensure that the employing agency is relying on accurate information in making its employment decision.

Thank you for the opportunity to provide these comments in response to OPM's Expiring Information Collection 3206-0182, Declaration for Federal Employment, Optional Form (OF) 306. If you have any questions or would like to discuss these comments, please feel free to contact me at 202.663.4609, or Carol Miaskoff, Assistant Legal Counsel, at 202.663.4645.

Sincerely,

/s

Peggy R. Mastroianni
Associate Legal Counsel

---

[1] See 42 U.S.C. § 2000e-2(a), (h), (k).

[2] 42 U.S.C. § 2000e-2(k)(1)(A)(i). See Griggs v. Duke Power Co., 401 U.S. 424 (1971).

[3] See El v. SEPTA, 479 F.3d 232, 245 (3d Cir. 2007) (concluding that Title VII requires criminal record screening policies to "accurately distinguish between applicants that pose an unacceptable level of risk and those that do not"); see also EEOC Compl. Man. No. N-915, Section 15: "Race & Color Discrimination" (Apr. 19, 2006); EEOC Policy Guidance No. N-915-061, "Policy Guidance on the Consideration of Arrest Records in Employment Decisions Under Title VII" (Sept. 7, 1990); EEOC Enforcement Guidance No. N-915, "Policy Statement on the Use of Statistics in Charges Involving the Exclusion of Individuals with Conviction Records from Employment" (July 29, 1987); and EEOC Policy Guidance No. N-915, "Policy Statement on the Issue of Conviction Records Under Title VII of the Civil Rights Act of 1964" (Feb. 4, 1987).

[4] See Gregory v. Litton Sys. Inc., 316 F. Supp. 401, 403 (C.D. Cal. 1970) (a "record of arrests without convictions, is irrelevant to [an applicant's] suitability or qualification for employment"), modified on other grounds, 472 F.2d 631 (9th Cir. 1972).

[5] See Clark v. Arizona, 548 U.S. 735, 766 (2006) ("The first presumption [in a criminal case] is that a defendant is innocent unless and until the government proves beyond a reasonable doubt each element of the offense charged. . . .").

[6] See Schware v. Bd. of Bar Exam'rs, 353 U.S. 232, 241 (1957) ("The mere fact that a [person] has been arrested has very little, if any, probative value in showing that he has engaged in misconduct."); Dozier v. Chupka, 395 F. Supp. 836, 850 n.10 (S.D. Ohio 1975) (holding that the use of arrest records was too crude a predictor of an employee's predilection for theft where there were no procedural safeguards to prevent reliance on unwarranted arrests).

[7] See 63C Am. Jur. 2D Prosecuting Attorneys § 19; 21 Am. Jur. 2D Criminal Law § 715.

[8] See, e.g., U.S. DEP'T OF JUSTICE, THE ATTORNEY GENERAL'S REPORT ON CRIMINAL HISTORY BACKGROUND CHECKS 17 (2006), available at www.usdoj.gov/olp/ag_bgchecks_report.pdf (reporting that in 2006, only 50% of arrest records in the Federal Bureau of Investigation's national system of automated criminal information were associated with a final disposition for the arrest[0]).

[9] See Interstate Identification Name Check Efficacy: Report of the National Task Force to the U.S.